IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **DAVID MORALES-MACHUCA,**<br>    Petitioner, | * <br> * <br> * |
| | * |
|     v. | * |
| | *    **CIVIL NO. 09-2036(PG)** |
| | *    **RELATED CRIM. 02-117(PG)** |
| **UNITED STATES OF AMERICA,**<br>    Respondent. | * <br> * |
| ———————————————————————— | * |

### OPINION & ORDER

Before the Court is Petitioner's 28 U.S.C. Sec. 2255 Habeas Corpus Petition (D.E.3)[1]; Petitioner's Supplemental Motion (D.E. 4);  Respondent's Response to the Petition (D.E.13); and  Petitioner's Reply to the Government's Response (D.E. 16). For the reasons discussed below, the Court finds the Petition shall be **DENIED.**

### I. BACKGROUND

On March 14, 2003, Petitioner, David Morales-Machuca, (hereinafter "Petitioner" or "Morales-Machuca") and four (4) other co-defendants were indicted by a Federal Grand Jury in a Second Superseding Indictment (Crim. D.E. 85)[2].

Count One (1) charged Petitioner and his four (4) co-defendants with on or about November 30, 2001, up to and including the date of the return of this indictment, in the District of Puerto Rico and within the jurisdiction of this

---

[1] D.E. is an abbreviation of docket entry number.

[2] Crim.D.E. is an abbreviation of criminal docket entry.

Court, all five co-defendants, did, knowingly, willfully, unlawfully, and intentionally combine, conspire, confederate and agree with each other and with diverse other persons to the grand jury unknown, to unlawfully obstruct, delay and affect, commerce as the term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951(b)(1), by the unlawful taking or obtaining property, consisting of money in custody or possession of Ranger America Armored Services Co., a business or industry engaged in interstate commerce or affecting interstate commerce, from the person of or in the presence of the possessor of said money, against his will by means of actual and threatened force, violence, or fear of injury, immediate or future, to his person.

Counts Two through Ten are incorporated herein by reference and are further alleged as overt acts in furtherance of the conspiracy charged herein.   All in violation of Title 18, United States Code, Section 1951(a).

Count Two (2) charged Petitioner and his four (4) co-defendants with on or about November 30, 2001, up to and including the date of the return of this indictment, in the District of Puerto Rico and within the jurisdiction of this Court, the defendants herein, and other persons to the grand jury unknown, aiding and abetting each other, knowingly possessed, used or carried firearms, as that term

is defined in Title 18, United States Code, Section 921(a)(3), in furtherance of, or during and in relation to a crime of violence as that term is defined in Title 18, United States Code, Section 924(c)(3) to wit: conspiracy to interfere with commerce by robbery, as set forth in Count One of this Indictment, an offense for which they may be prosecuted in a Court of the United States, in violation to Title 18, United States Code, Section 1951(a), all in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii)and 2.

Count Seven (7) charged Petitioner and his four (4) co-defendants, the defendants herein, and other persons to the grand jury unknown, aiding and abetting each other, did knowingly, willfully, intentionally and unlawfully obstruct, delay or affect commerce, or the movement of any article or commodity in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), by robbery as that term is defined in Title 18, United States Code, Section 1951(b)(1), by unlawfully taking or obtaining property consisting of money to wit: approximately One Hundred Thousand Dollars ($100,000.00), in the custody or possession of Ranger America Armored Services Co., from the person of or in the presence of Ranger America security guards, against their will by means of actual and threatened force, or violence, that is, at gun point, and by shooting towards the security guards and causing the death of Gilberto Rodriguez-Cabrera.  All in violation of

Title 18, <u>United States Code</u>, Sections 1951(a) and 2.

Count Eight (8) charged Petitioner and his four (4) co-defendants with on or about March 27, 2002, in the District of Puerto Rico and within the jurisdiction of this Court, the defendants herein, and other persons to the grand jury unknown, aiding and abetting each other, knowingly possessed, brandished, discharged, used and carried firearms, as that term is defined in Title 18, <u>United States Code</u>, Section 921(a)(3), during and in relation to a crime of violence as that term is defined in Title 18, <u>United States Code</u>, Section 924(c)(3), for which they may be prosecuted in a Court of the United States, that is, interference with commerce by robbery in violation to Title 18, <u>United States Code</u>, Section 1951(a) and as set forth in Count Seven of this Indictment, which is realleged and incorporated by reference herein, and in the course of that crime, unlawfully killed Gilberto Rodriguez-Cabrera with malice aforethought through the use of a firearm, which is murder as defined in Title 18, <u>United States Code</u>, Section 1111, by knowingly, willfully, deliberately, maliciously, and with premeditation, shooting Gilberto Rodriguez-Cabrera with a firearm, thus causing his death.  All in violation of Title 18, <u>United States Code</u>, Section 924(j) and (2).

Count Nine (9) charged Petitioner and his four (4) co-defendants with on or about March 27, 2002, in the District of Puerto Rico and within the jurisdiction of this Court, the defendants herein, and other persons to the grand jury

unknown, aiding and abetting each other, knowingly possessed, brandished, discharged, used or carried firearms, as that term is defined in Title 18, <u>United States Code</u>, Section 921(a)(3), during and in relation to a crime of violence as that term is defined in Title 18, <u>United States Code</u>, Section 924(c)(3), to wit: interference with commerce by robbery as set forth in Count Seven herein, an offense for which they may be prosecuted in a Court of the United States in violation of Title 18, <u>United States Code</u>, Section 1951(a), all in violation of Title 18, <u>United States Code</u>, Sections 924(c)(1)(A)(iii)and 2.

Count Ten (10) charged Petitioner with on or about April 17, 2002, in the District of Puerto Rico and within the jurisdiction of this Court, Morales-Machuca, the defendant herein, who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess in or affecting commerce any firearm or ammunition, or receive any firearm or ammunition, as those terms are defined in Title 18, <u>United States Code</u>, Sections 921(a)(3) and 921(a)(17)(A) respectively, that is: a loaded 9mm caliber, Taurus pistol, model PT99AFS, serial number TPA62607, which firearm or ammunition has been shipped or transported in interstate or foreign commerce.

It is alleged that Morales-Machuca, the defendant herein, committed the above-mentioned firearm offense after being convicted and sentenced on or about October 25, 1996,

to two (2) years of imprisonment for a violation of the
Puerto Rico Penal Code, Attempt to Murder, in the Superior
Court of Puerto Rico, Humacao Part, and on or about
December 3, 1996, was sentenced to three (3) years of
imprisonment for violations of the Puerto Rico Weapons Law,
in the Superior Court of Puerto Rico, Caguas Part, all in
violation of Title 18, <u>United States Code</u>, Sections
922(g)(1) ans 924(a)(2).

On September 9, 2005, on the eighth day of a jury trial
Morales-Machuca was found guilty as to counts one (1), two
(2), seven (7), eight (8), nine (9) and ten (10) of the
Second Superseding Indictment (Crim.D.E.564).  On January
4, 2006, Petitioner through his counsel filed his
objections to the Pre-Sentence Report (Crim.D.E.598).  On
January 11, 2006, Morales-Machuca's sentencing was held.
The Court denied Petitioner's request for a downward
adjustment for minor role in the offense.  The Court
sentenced Petitioner to a term of imprisonment of twenty
(20) years as to counts one (1) and seven (7) and ten (10)
years as to count ten (10), said terms to be served
concurrently with each other.  A term of imprisonment of
thirty (30) years as to counts two (2) and nine (9), said
terms to be served concurrently with each other but
consecutively to all other counts.  A term of imprisonment
of Life as to count eight (8).  A Supervised Release Term
of three (3) years as to counts one (1) seven (7) and ten
(10) and a term of Supervised Release of five (5) years as

to counts two (2), eight (8) and nine (9) to run concurrently with each other (Crim.D.E. 602).

On January 19, 2006, Morales-Machuca filed a Notice of Appeal (Crim.D.E.604). On November 3, 2006, Petitioner filed a Motion to Dismiss the Second Superseding Indictment (Crim.D.E. 645). On November 8, 2006, the Court entered an Order denying the Motion to Dismiss the Second Superseding Indictment (Crim.D.E. 646). On May 16, 2007, Petitioner again filed a Motion to Dismiss the Second Superseding Indictment (Crim.D.E. 677). On May 17, 2007, the Court entered an Order denying said motion (Crim.D.E. 678). On May 31, 2007, Morales-Machuca filed a Notice of Appeal as to the Court's order denying the dismissal of the Second Superseding Indictment (Crim.D.E. 681). On May 6, 2008, the First Circuit Court issued its Judgment affirming the District Court's denial of the dismissal of the Second Superseding Indictment (Crim.D.E.689).

On October 17, 2008, the First Circuit Court of Appeals affirmed Petitioner's conviction and sentence, United States v. Morales-Machuca, 546 F.3d 13 (1st Cir. 2008). No request for writ of certiorari was filed and the conviction became final on January 15, 2009. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Morales-Machuca had until January 15, 2010, to file his 2255 Petition. The same was filed on October 7, 2009, therefore the same is timely (D.E.3).

## II. DISCUSSION

In his 2255 Petition, Morales-Machuca raises seven allegations of ineffective assistance of counsel:

1.   Whether the Government suppressed evidence in violation of <u>Brady</u> v. <u>Maryland</u>;

2.   Whether the Prosecutor committed subordination of perjury as such violating Petitioner's right to due process;

3.   Whether it was Prosecutorial misconduct in presenting evidence of Petitioner's prior conviction, and whether that evidence was prejudicial to the Petitioner;

4.   Whether Petitioner's counsel rendered ineffective assistance of counsel during suppression hearing;

5.   Whether Petitioner's counsel rendered ineffective assistance of counsel during trial;

6. Whether appellate counsel rendered ineffective assistance of counsel;

7.   The cumulative effect of counsel's deficient performance resulted in prejudicial error that violated Petitioner's Fifth Amendment Constitutional Right and Petitioner's Sixth Amendment Right.

## A.   28 U.S.C. Sec. 2255 standards and exhaustion requirements

Title 28 U.S.C. Sec. 2255 allows a federal prisoner to move the court to vacate, set aside, or correct his sentence if one of the following events happens:

1.   the sentence was imposed in violation of the

Constitution or laws of the United States...

2.   the court was without jurisdiction to impose the sentence

3.   The sentence was in excess of the maximum authorized by law  or...

4.   The sentence is otherwise subject to collateral attack.

When a prisoner files a motion for relief pursuant to section 2255, the court may dismiss the motion without an evidentiary hearing if "the motion and files and records of the case show conclusively that the movant is not entitled to relief."

It is well settled law that a section 2255 motion is not a substitute for an appeal.  Therefore, the defendant must first raise his claims on direct appeal before bringing the claim in a section 2255 motion. <u>United States</u> v. <u>Essig</u>, 10 F.3d 968 (3d Cir. 1993).  If a defendant fails to preserve his claim on direct appeal a court may not consider the claim in a subsequent section 2255 motion, unless the defendant can establish "cause and prejudice", <u>United States</u> v. <u>Frady</u>, 456 U.S. 152, 167 (1982); or a "fundamental miscarriage of justice". <u>Murray</u> v. <u>Carrier</u>, 477 U.S. 478, 496 (1986).  The exception to this dogma of the exhaustion requirement is the allegation of ineffective assistance of counsel which may be brought for the first time in a section 2255 motion.

**B.   Claim of Ineffective Assistance of Counsel**

Civil No. 09-2036(PG)                                    Page 10

To establish ineffective assistance of counsel, a
defendant must show that:

> 1.  His attorney's performance was deficient, and
> 2.  The deficient performance prejudice his
>     defense. <u>Strickland</u> v. <u>Washington</u>, 466 U.S.
>     668, 687 (1984).

In order to establish deficiency, a defendant must
establish that counsel's performance "fell below an
objective standard of reasonableness under prevailing
professional norms." <u>Strickland</u> 466 U.S. at 688. Under
<u>Strickland</u>, counsel is presumed to have acted within the
range of "reasonable professional assistance," and it is
defendant who bears the burden of "overcoming the
presumption that, under the circumstances, that challenged
action 'might be considered sound trial strategy.'"
<u>Strickland</u>, 466 U.S. at 689. To show prejudice, a
defendant must establish that "there is a reasonable
probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different. A
reasonable probability is a probability sufficient to
undermine confidence in the outcome." <u>Strickland</u>, 466 U.S.
at 694.

Petitioner has been unable to meet the <u>Strickland</u>
standard. The Court will review each of the seven claims
raised by Petitioner.


<u>Brady violation</u>

Morales-Machuca's first allegation is that of a <u>Brady</u> violation.  Petitioner alleges that the Government withheld evidence that if provided would have helped him in his defense.

Specifically, Morales-Machuca alleges that the Government withheld information as to the friendship or close ties between the Government witness Jocelyn Serrano and Puerto Rico Police Officer Sergeant Agosto[3].  It is unclear what basis Petitioner has to allege that the Government had evidence of such a relationship or possessed information on the matter.  A review of the record indicates that there can be no valid claim of a <u>Brady</u> violation.

In <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963), the Supreme Court held that, irrespective of good or bad faith, suppression by the prosecution of evidence favorable to a defendant who has requested it violates due process where such evidence is material to either guilt or punishment. The elements of a <u>Brady</u> claim are that the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either wilfully or inadvertently; and prejudice must have ensued, <u>Strickler</u> v.

---

[3] Petitioner alleges that Sergeant Agosto and Serrano were neighbors and knew each other very well.  His insinuation is that they plotted to frame Petitioner and involve him in this crime as retaliation for Morales-Machuca being physically abusive towards Serrano (D.E. 4).

Greene, 527 U.S. 263 (1999).  Morales-Machuca's Brady claim falls short.

The facts are that Petitioner's arresting officer was Pedro Diaz, Sergeant Agosto was his partner on the day of the arrest of Morales-Machuca.  It was officer Pedro Diaz who testified at trial and not Sergeant Agosto (T.Tr. September 6, 2005, pp. 22-46).  During Officer Diaz's testimony at trial the following ensues:

> Q: Now, when Sergeant Agosto saw Jocelyn Serrano, did he tell you he knew her?
>
> A: Well, again, I'll tell you, he knew her because inclusively he lived next door to her.  And as I told you earlier, I knew her because of the toll station in Palmas.
>
> Q: So, actually you knew Jocelyn Serrano was Sergeant Agosto's next door neighbor.
>
> A: Where he lived before.

(T.Tr. September 6, 2005 at pp. 45-46).

It is precisely this information which Petitioner contends the Government withheld from him and therefore committed a Brady violation.  First of all, there is no evidence on the record that said information was withheld from Morales-Machuca.  Second, Petitioner himself was well aware of the acquaintance of Jocelyn Serrano and Sergeant Agosto.  In his own Memorandum in support of his 2255 petition Morales-Machuca states he informed his counsel prior to a suppression hearing of the seized weapon which resulted in

his arrest by Officer Diaz, Petitioner states that he told his attorney of the relationship between Jocelyn Serrano and Sergeant Agosto including that they had been neighbors (D.E. 4 at p. 8).

Furthermore, the Court fails to understand what if any difference this information could have made in this case. The fact remains that the information was provided to the jury by way of the testimony of Officer Diaz and counsel had every opportunity to question both Officer Diaz and Jocelyn Serrano on the matter.

As to Sergeant Agosto Petitioner's allegations are inaccurate for he was not his arresting officer nor was he a witness at his trial or any stage of the proceedings against him.

This allegation does not constitute a <u>Brady</u> violation. The requirements are not met.  A trial is not a soap opera and gossip is not evidence.  Having established that there was no evidence suppressed the Brady claim is **DISMISSED.**

<u>Subordination of perjury</u>

Petitioner alleges that witness Jocelyn Serrano committed perjury by deliberately testifying at trial differently than her prior testimony before a Federal Grand Jury.  This, Petitioner states, was done at the request of the Government.

A review of the record including the trial transcripts demonstrates that Morales-Machuca's claim is false and meritless.

In order for a witness to commit perjury it must be established not that the witness' statement is different from a prior statement given under oath; but rather that the witness intentionally gave false information as to a material matter.   A witness testifying under oath or affirmation commits perjury if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory, <u>United</u> <u>States</u> v. <u>Dunnigan</u>, 507 U.S. 87 (1993).

In the case at hand the most that Petitioner can claim is that Jocelyn Serrano confused details of her account of the events as she lived through them.  That is a far cry from perjury.  Furthermore, the record reflects that Jocelyn Serrano's testimony was corroborated by exhibits presented at trial as well as the testimony of other trial witnesses.

As to the preposterous claim that the non existent perjury was committed at the request or with the acquiescence of the government, suffice it to say that the same is frivolous, unsupported by facts and meritless.  The allegation of subordination of perjury is **DISMISSED.**

<u>Prosecutorial misconduct - prior conviction evidence</u>

Petitioner's third allegation is that the Government incurred in prosecutorial misconduct when it introduced at trial evidence of his prior state convictions.

The fact of the matter is that Morales-Machuca was

charged in Count Ten (10) of the Second Superseding Indictment with being a previously convicted felon in possession of a firearm as established in Title 18, <u>United States Code</u>, Section 921(g)(1) and 924(a)(2).  An element of the offense which the Government had to prove was that Petitioner was a convicted felon.  Therefore, the Government had to present evidence of his prior conviction if it wished to prove the charges in count ten (10).

The Government meeting its burden of proof as to a particular count is in no way prosecutorial misconduct nor is it grounds for a valid allegation in a section 2255 petition; as such it is **DISMISSED.**

<u>Suppression Hearing</u>

Petitioner's fourth allegation is that of ineffective assistance of counsel during a suppression hearing.  A review of Morales-Machuca's claim and of the record indicates that the suppression hearing he is referring to is that of October 22, 2002.  Said hearing is not pertaining to the criminal case which leads to this 2255 petition.

On May 15, 2002, Petitioner was indicted in criminal case 02-184(DRD).  In that case a suppression hearing was held on October 22, 2002, (Crim.D.E. 27 of case 02-184). A "report and Recommendation" as to said hearing was rendered on October 31, 2002, (Crim.D.E. 28 of case 02-184).  On March 23, 2003, the government requested the dismissal of the indictment in 02-184 on speedy trial

grounds.  As such the judgment of discharge was entered on April 1, 2003 (Crim.D.E. 36 of case 02-184).

Therefore, Petitioner's allegation of ineffective assistance of counsel is related to a separate case which was eventually dismissed and has no bearing on the matter at hand.  The same is **DISMISSED.**

<u>Ineffective assistance of counsel during trial</u>

Petitioner alleges that his trial counsel was ineffective due to his failure to renew a Rule 29 motion at the end of the case and after the jury verdict.  The record reflects that counsel did not in fact renew the Rule 29 motion and therefore waived it.  However, Morales-Machuca must be able to establish that said failure was such that it caused him prejudice.  At this he fails.

Morales-Machuca has failed to show  with reasonable probability that had his counsel renewed the Rule 29 motion the same would have been granted by the court on the basis of insufficiency of the evidence.

Furthermore Petitioner raised this precise allegation on appeal.  The First Circuit Court of Appeals stated:

> Based on this evidence, a reasonable jury could have concluded that Morales participated in the conspiracy to obstruct interstate commerce through robbery (Count One), and aided and abetted the commission of the March 27, 2002 robbery (Count Seven).  While a large portion of the evidence submitted to the jury regarding Morales's role in

the offense is based primarily on Serrano's testimony, the jury reasonably credited her account of the events.  It is not for us to make credibility determinations in the course of a review of the sufficiency of the evidence.  Our task is only to determine whether a rational jury could have believed the testimony.  See United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992). Here a rational jury could have and did so. United States v. Morales-Machuca, 546 F.3d 13, 21 (1st Cir. 2008).

The Court went on in its analysis of the Rule 29 failure and stated:

Based on the record evidence, we conclude that a reasonable jury could have found Morales guilty beyond a reasonable doubt of all the charged offenses.  He therefore fails to make the more difficult showing of clear and gross injustice. Accordingly, we affirm the district court's denial of his Rule 29 motion. Morales-Machuca at 22.

Having established that this issue was already resolved on appeal Petitioner is not entitled to re assert it in his 2255 petition, as such the same is **DISMISSED**[4].

Petitioner's second allegation of ineffective

---

[4] The Court notes that even if Petitioner were allowed to re submit the argument it would still fail at meeting the requirements of Singleton.

assistance of counsel during trial revolves around counsel's alleged failure to object to the introduction into evidence of the gun occupied during Morales-Machuca's traffic stop and subsequent arrest.

The record does not support Petitioner's allegation. A review of the trial transcript clearly establishes that the Government laid the proper foundation for the introduction of the weapon. The correct ruling was to admit it into evidence and exhibit it to the jury.

Petitioner complains that his counsel did not establish that the weapon lacked compatibility with the casing used to murder the Ranger America guard Gilberto Rodriguez-Cabrera. Once again the trial transcript does not support said allegation. Both the government and defendants presented expert witnesses that analyzed the bullet casings recovered from the murder and compared it to the weapon taken from Morales-Machuca. Each expert had an independent and different opinion. It was up to the jury to determine which expert it wished to follow in its analysis and so they did[5]. This is not an instance of ineffective assistance of counsel and therefore the allegation is **DISMISSED**.

Ineffective assistance of counsel during appeal

Petitioner's sixth allegation is that his appellate

---

[5] See Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620 (1983); United States v. Fortune, 513 F.2d 883(5th Cir. 1975).

counsel was ineffective because he did not properly review the evidence nor did he investigate the allegation that Jocelyn Serrano and Sergeant Agosto were out to frame him. Instead he choose other arguments.

Claims of ineffective assistance of appellate counsel are measured under the Strickland standard, Evitts v. Lucy, 469 U.S. 287(1985).  Appellate counsel is not required to raise every non-frivolous claim, but rather selects among them to maximize the likelihood of success on the merits, Lattimore v. Dubois, 311 F.3d 46 (1st Cir. 2002).

Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." Smith v. Robbins, 528 U.S. 259, 288 (2000).  To overcome the presumption of competence of appellate counsel, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert.  Morales-Machuca has not made such a showing.  His allegation that the failure to argue something that is mere gossip versus stronger arguments such as the Rule 29 motion to dismiss simply does not prosper.

Appellate counsel made a tactical choice regarding the issues to be raised on appeal.  The fact that Petitioner would have raised different challenges does not establish that counsel was ineffective, Smith v. Robbins, 528 U.S. 259 (2000).  In this case Petitioner has been unable to meet the burden of establishing that his appellate counsel

failed to raise and argue stronger issues than those litigated.  As such he can not establish ineffective assistance of his appellate counsel.  His claim of ineffective assistance of appellate counsel is **DISMISSED**.

Cumulative effect

   Petitioner's final allegation is that of cumulative effect.  Meaning that so many errors were committed that the totality of the errors made allows for the granting of his 2255 petition.

   In order for this claim to prosper, Morales-Machuca had to have established that as to each of the errors incorporated in his petition there was a deficient conduct which lead to his prejudice and he would be entitled to relief. Fisher v. Angelone, 1563 F.3d. 835 (4th Cir. 1998). Petitioner has clearly been unable to make such a showing to even one of his allegations.  Therefore, there is no cumulative effect and his final allegation is to be **DISMISSED**.

Claim of actual innocence

   The Court will address one final claim raised by Petitioner and that is his claim that he is actually innocent of the crimes he was convicted of.  He claims that he has new evidence that would prove such.  Petitioner's new evidence is the testimony of his sister who would state that Jocelyn Hernandez told her that Morales-Machuca did not participate in the crime.  Suffice it to say that the evidence presented at trial was more than enough for a jury

to convict Morales-Machuca of the crimes charged.  The same was analyzed by the First Circuit Court of Appeals as part of Morales- Machuca's appeal process and his conviction and sentenced were affirmed.  Finally, the "new evidence" stated by Petitioner simply does not meet the criteria of United States v. Desir, 273 F.3d 39 (1st Cir. 2001). Therefore the same will not be entertained by this Court.

### III. CONCLUSION

For the reasons stated, the Court concludes that Petitioner **DAVID MORALES-MACHUCA,** is not entitled to federal habeas relief on the claims.  Accordingly, it is ordered that petitioner **DAVID MORALES-MACHUCA's** request for habeas relief under 28 U.S.C. Sec. 2255(D.E.3) is **DENIED,** and his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. Sec. 2255 is **DISMISSED WITH PREJUDICE.** Petitioner's request for an evidentiary hearing is **DENIED.**

### IV. CERTIFICATE OF APPEALABILTY

For the reasons previously stated the Court hereby denies Petitioner's request for relief pursuant to 28 U.S.C. Section 2255.  It is further ordered that no certificate of appealability should be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. 2253(c)(2).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th of February, 2012.


                                        s/ Juan M. Pérez-Giménez
                                        **JUAN M. PEREZ-GIMENEZ**
                                        **UNITED STATES DISTRICT JUDGE**